Alex Paul v. Commissioner.
Paul v. Commissioner
Docket No. 93938.
United States Tax Court
T.C. Memo 1963-8; 1963 Tax Ct. Memo LEXIS 332; 22 T.C.M. (CCH) 20; T.C.M. (RIA) 63008; January 11, 1963
*332 Jerry Sklar, Esq., for the petitioner. Chapman H. Belew, Jr., Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the taxable years 1956, 1957, and 1958 in the amounts of $361.86, $354.28, and $391.32, respectively, and additions to tax under section 6653(a) of the Internal Revenue Code of 1954 for the years 1956, 1957, and 1958, in the amounts of $18.09, $17.71, and $19.57, respectively. The issues for decision are: (1) Whether petitioner understated his income from tips received as a waiter in each of the taxable years 1956, 1957, and 1958. (2) If petitioner's income was understated in each of the taxable years 1956, 1957, and 1958, was any part of the resulting underpayment of tax due to negligence or intentional disregard of rules and regulations. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner, an individual residing in Jersey City, New Jersey, timely filed his Federal income tax returns for the taxable years 1956, 1957, and 1958 with the district director of internal revenue at *333 Newark, New Jersey. Petitioner claimed as dependents on each of these returns himself, his wife, and three children. During the years 1956, 1957, and 1958 petitioner was employed as a waiter. On June 16, 1956, petitioner began working for Lindy's restaurant and continued working at Lindy's throughout 1957 and 1958. During the part of 1956 prior to June 16, 1956, petitioner worked as a waiter at the following restaurants: Pearl St. Restaurant; Dubonnet Restaurant; Harry M. Stevens, Inc.; Dime Amusement Corp.; Lou G. Siegel, Inc.; Spindletop, Inc.; Janaug, Inc.; Sardi's Restaurant Corp.; and August Luchow, Inc. During each of the taxable years here involved, petitioner realized income from both wages and tips. Petitioner received approximately the same average daily amount of tips at the restaurants at which he was employed from January 1 to June 16, 1956, as he received at Lindy's during his employment there. The waiters at Lindy's, including petitioner, utilized the rotation system in 1956, 1957, and 1958. This is a system whereby the waiters switch stations regularly, so that over a period of time, all waiters have an opportunity to service the same stations in the restaurant. *334 Petitioner was employed only as a luncheon waiter and was therefore eligible for rotation only on the luncheon shift although in 1956, 1957, and 1958 he almost always worked both lunch and dinner, and on occasion, also worked suppers. When he worked at dinners or suppers, it was as a substitute for a waiter who was away from work and petitioner would fill the station assigned to that waiter. Often a waiter would be away from work on a day he was assigned an undesirable station. Petitioner worked 22, 45, and 44 hours of overtime at Lindy's during the years 1956, 1957, and 1958, respectively. Some of these overtime hours were worked during weeks in which petitioner had not worked a full 5 days but worked more than the regular number of hours on some specific day. Petitioner was not absent from work because of illness during 1956, 1957, and 1958. Exclusive of overtime, petitioner worked 141 1/2 full days for Lindy's in 1956, 249 1/2 full days in 1957, and 245 1/2 full days in 1958. Petitioner received payroll slips showing his wages and tips as recorded on Lindy's books. The tips were entered on Lindy's records for the purpose of computing amounts to be paid under the Unemployment *335 Insurance Law of New York. This law permited tips to be computed by a formula and did not require payments upon a combination of wages and tips in excess of $3,000 a year. The amount of tips as shown on Lindy's records for petitioner was $6 for each full day petitioner worked and a proportionate amount of $6 for a partial day (i. e., $3 for half a day, etc.), and if the amount shown for any day coincided with the amount of tips actually received by petitioner for any particular day, it would be by mere happenstance. Petitioner did not keep any records of the amounts of the tips which he received from customers. There were approximately 80 waiters working at Lindy's and during the years here involved it was not the custom of these waiters to keep records of the amount of tips they received from customers. During the years here involved petitioner gave the bus boy 15 percent of the tips he received. Union rules require that waiters give the bus boy a minimum of 10 percent. A large percentage of the clientele of Lindy's is a transient type including many tourists. Steady customers generally give waiters higher tips than transients. Petitioner during the years here involved did not *336 have many steady customers. Lindy's has a small percentage of charge customers. It has only its own charge accounts and does not accept Diners' Club or other credit cards. A charge customer generally tips higher than a cash customer. Some of the charge customers during the years here involved included tips on their charge slip and the restaurant immediately gave the amount of such tip to the waiter. The average amount of the tips entered on all charge slips upon which tips were entered was approximately 20 percent of the amount of the check during the years here involved but some tips entered upon charge slips were only approximately 10 percent of the food cost. A waiter had 10 seats for lunch, but these were not always filled since there may be 3 or less people at a table for 4. There was a lunch turnover of about one and one-half times except on Wednesday and Saturday, when the lunch turnover was between two and two and one-half times. Lunch checks averaged about $2. A waiter, when working dinner, had 8 seats, 2 square tables. The average dinner check would be larger than the average lunch check. Petitioner complained, upon occasions, during the years here involved to a member *337 of the shop committee that he wasn't receiving a fair share of patrons. Total annual sales of Lindy's for the years 1956, 1957, and 1958, after elimination of counter sales and sales by the cashier, were $2,637,300.09, $2,545,011.35, and $2,456,081.37, respectively. These figures are exclusive of New York State sales tax. Included in these annual sales figures were liquor sales made at the bar, on which there would be no tips to waiters. The amount of these liquor sales at the bar was approximately 1 percent of total sales. Total annual salaries paid to waiters by Lindy's were $157,071, $160,895, and $152,204.19 in the years 1956, 1957 and 1958, respectively. An analysis of the sales by 9 full-time waiters at Lindy's for a 4-week period in 1957 shows that the waiters with the highest average sales for this period wrote checks for about 40 percent more sales than the waiter with the lowest average sales during this period. By applying 12 1/2 percent to the total food checks of each of these waiters a daily average computed tip for each day involved was $13.95 for the waiter with the least average sales and $19.28 for the one with the highest average sales. Petitioner's wages *338 for the years 1956, 1957, and 1958 were $1,800.74, $1,867.97, and $1,980.01, respectively. Petitioner estimated the amount of tips he received during the years here involved upon the basis of the amount of tips shown on his payroll slips and on his income tax returns reported total amounts of tips of $1,400, $1,500, and $1,500 for the years 1956, 1957, and 1958, respectively. Respondent in his notice of deficiency determined that petitioner for the years 1956, 1957, and 1958 received tips of $3,372.28, [1] $3,362, and $3,564, respectively, and that petitioner understated his income from tips on his income tax returns by $1,841.33 in 1956, $1,862 in 1957 and $2,064 in 1958. Respondent in his notice of deficiency determined additions to petitioner's tax in the amount of 5 percent of the deficiency determined with the following explnation: Negligence penalty has been asserted in accordance with the provisions of *339 Section 6653(a) of the Internal Revenue Code. During the years 1956, 1957, and 1958, petitioner received taxable income from tips in the total amounts of $2,200, $2,300, and $2,400, respectively. Opinion The question involved with respect to petitioner's income from tips is entirely factual. Tips are a part of compensation for services. The determination of respondent as to the amount received by petitioner as tips is presumptively correct and the burden is on petitioner to show error therein. Where petitioner, as was the case here, has failed to keep accurate records of the amounts of tips received, respondent is authorized to make a computation of the amounts received in accordance with such method as in his opinion clearly reflects petitioner's income. Dorothy L. Sutherland, 32 T.C. 862 (1959). In the instant case respondent's computation of tips received by petitioner was based on a formula which respondent used with respect to each of the waiters working at Lindy's during the years 1956 through 1958. Respondent took 15 percent of Lindy's total sales for each year and determined the percentage that the resultant figure bore to total *340 wages paid by Lindy's to all waiters. Respondent reduced this percentage from 225 percent to 180 percent to adjust for the fact that no tips were received on sales at the bar, that the waiters turned over a portion of their tips to bus boys, and that the less efficient waiters would receive less in tips than the more efficient would receive. The aggregate tips was determined by applying 180 percent to the aggregate wages paid to waiters by Lindy's and this aggregate was prorated among the approximately 80 waiters on the basis that each waiter's wages bore to the total wages of Lindy's waiters. By this computation respondent arrived at the amount of the tips received by each waiter at Lindy's. Petitioner takes issue with respondent's method in all particulars. Petitioner contends that the average tip at Lindy's is only 7 or 8 percent of total sales rather than 15 percent and that each waiter does not receive a proportionate amount of the total tips left by customers at Lindy's. Petitioner points out that some waiters with steady customers and better stations serve more customers, write food checks in much larger amounts, and receive more in tips than do other waiters with less desirable *341 stations and no steady customers. Respondent made a test check for a 4-week period of 9 regular full-time waiters at Lindy's by adding the total checks written by each and applying 12 1/2 percent thereto to determine the tips received by each such waiter. The smallest daily average tip which respondent arrived at by this computation was $13.95 and the highest was $19.28. Respondent contends that this computation supports his position that the $13.20 per day tips, the average daily tip computed under his formula, would be the lowest that any waiter at Lindy's would receive. Petitioner in the instant case was a regular luncheon waiter but was not a regular dinner waiter and only served as a dinner waiter when some regular dinner waiter was away from work. For this reason petitioner quite often got less desirable stations for serving dinner. Petitioner also gave the bus boy 15 percent of the tips he received instead of the minimum 10 percent required by the union contract. It is to be expected that a part-time waiter with no, or very few, steady customers would have received a lesser amount of tips than a full-time waiter with more steady customers including charge customers. Charge *342 customers and steady customers on the average tip better than transient customers. Since there is no evidence in this record to show the amount of total checks written by petitioner in any year or whether the average percent of tips received by petitioner was the same as the average percent of tips received by all waiters at Lindy's, it would serve no useful purpose to attempt to determine from the unsatisfactory evidence in this record what was the average percentage tip at Lindy's during the years here involved. Petitioner argues that the fact that an employer under the Unemployment Insurance Law of New York was, under certain circumstances, permitted to use 7 1/2 percent of the amounts of the food checks written by a waiter for the computation of the tips received by the waiter for the purpose of that law, is some evidence that 7 1/2 percent was an average tip in New York. There is, however, nothing in the record to support petitioner's contention that the basis of this regulation under the Unemployment Insurance Law of New York was that 7 1/2 percent of the amount of a check was an average tip in New York, or if an average in New York, that such amount was average at Lindy's. *343 We think it is clear from the record that petitioner received less tips than a waiter regularly employed at luncheon and dinner and who had worked at Lindy's long enough to obtain some steady customers. Upon consideration of the evidence as a whole, we have found that petitioner's income from tips was $2,200, $2,300, and $2,400 in the years 1956, 1957, and 1958, respectively. Since petitioner reported only $1,400, $1,500 and $1,500 for the years 1956, 1957, and 1958, respectively, we hold that he understated his income from this source in the amount of $800, $800, and $900 in these respective years. Petitioner offered evidence of his modest method of living in support of his contention that his tips did not exceed $6 per day. We have made no finding in this regard since we do not think this fact is of assistance in reaching a decision in this case. The final question is whether respondent erred in the assertion of the additions to the tax under section 6653(a) of the Internal Revenue Code of 1954. This section of the Code provides as follows: Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part *344 of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. Respondent has not designated in his notice of deficiency whether he considers petitioner's underpayment to be due to negligence or to intentional disregard of regulations. We think the evidence clearly shows that petitioner had no intentional disregard for regulations but that he believed he could rely upon the slips furnished him by his employer which showed his tips as $6 per day. The facts also show that petitioner was not negligent in failing to report the full amount of tips received but that he followed the system used by the other waiters at Lindy's of relying on the statements furnished by his employer listing the amount of his tips. While petitioner was mistaken in his belief that the wage slips furnished to him showed the full amount of his taxable income from tips, this fact does not justify the conclusion that petitioner was *345 negligent in so doing. Cf. Tatem Wofford, 5 T.C. 1152, 1166 (1945). Decision will be entered under Rule 50. Footnotes
1. This amount is 180 percent of $1,873.49, the amount reported by petitioner on his 1956 return as total wages. Petitioner's correct wages for 1956 were $1,800.74. Respondent on brief contends for tips for 1956 of only $3,241.33, which is 180 percent of $1,800.74.↩